# EXHIBIT 3



August 8, 2023

Adrian Fontes
Office of the Secretary of State
1700 W Washington St Fl 7
Phoenix AZ 85007-2808

Dear Secretary Fontes:

As you are aware, the National Voter Registration Act ("NVRA") requires States to maintain an accurate and current voter registration roll for elections for federal office. Based on our analysis, 14 Arizona counties are in violation of Section 8 of the NVRA. By comparing publicly available voter registration records with the U.S. Census Bureau's 2017-2021 American Community Survey of citizen voting age population, we have determined that at least four counties have more registered voters than adult citizens over the age of 18. Furthermore, we have identified nine counties that have voter registration rates that exceed 90 percent of adult citizens over the age of 18—a figure that far eclipses the voter registration rate nationwide in recent elections—and one additional county that exceeds 80 percent. This evidence shows that these counties are not conducting appropriate list maintenance to ensure that the voter registration roll is accurate and current, as required by federal law.

Congress enacted the NVRA "to protect the integrity of the electoral process." 52 U.S.C. §20501(b)(3). Specifically, it enacted Section 8 "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §20501(b)(4). Retaining voter rolls bloated with ineligible voters harms the electoral process, heightens the risk of electoral fraud, and undermines public confidence in elections. After all, "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam). Section 8 of the NVRA obligates States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to death or change of residence. 52 U.S.C. §20507(a)(4). And as the U.S. Supreme Court has recently confirmed, "federal law makes this removal mandatory." *Husted v. A. Philip Randolph Institute*, 138 S. Ct. 1833, 1842 (2018).

This letter provides statutory notice that Scot Mussi, acting as a registered Arizona voter with a substantial interest in secure elections, will bring a lawsuit against you and, if appropriate, against the counties named in this letter, if you fail to take specific actions to correct these violations of Section 8 within the 90-day timeframe specified in federal law. Furthermore, while we hope to avoid litigation, we nonetheless formally request that the Arizona Secretary of State and the 14 counties named in this letter, to the extent that they maintain separate records, take steps to preserve documents as required by Section 8(i) of the NVRA. 52 U.S.C. §20507(i)(1)-(2).

**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK** PLLC

As the Secretary of State, you are responsible for coordinating the required statewide list maintenance under the NVRA. The NVRA requires each State to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under" the law. 52 U.S.C. §20509. Arizona law designates the Secretary of State as that individual. *See* Ariz. Rev. Stat. § 41-121(A)(13). This letter explains how we concluded that Arizona and the 14 named counties are violating Section 8 of the NVRA, and the curative steps needed to bring the State into compliance with the law and avoid litigation.

I. **The NVRA Protects Election Integrity by Requiring Reasonable Efforts Be Made to Maintain Accurate and Current Lists of Registered Voters.**

Arizona's voter registration list maintenance program must be "uniform, non-discriminatory, and in compliance with the Voting Rights Act." 52 U.S.C. §20507(b)(1). Section 8 requires that States "remove the names of ineligible voters from the official lists of eligible voters by reason of (A) the death of the registrant; or (B) a change in the residence of the registrant" to outside of his or her current voting jurisdiction. 52 U.S.C. §20507(4)(A)-(B).

Additionally, the Help America Vote Act ("HAVA") mandates that States adopt computerized statewide voter registration lists and maintain them "on a regular basis" in accordance with the NVRA. 52 U.S.C. §21083(a)(2)(A). States must "ensure that voter registration records in the State are accurate and are updated regularly," a process which must include making a "reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. §21083(a)(4). HAVA's list maintenance mandates include coordination with "State agency records on death" and "State agency records on felony status" to facilitate the removal of individuals who are deceased or rendered ineligible under State law due to felony conviction. 52 U.S.C. §21083(a)(2)(A)(ii)(I)-(II).

As the chief election official for Arizona, the responsibility rests with you to coordinate and oversee the list maintenance activities of local and county election officials. *See, e.g., Scott v. Schedler*, 771 F.3d 831, 839 (5th Cir. 2014) (noting that "the NVRA's centralization of responsibility counsels against . . . buck passing"); *U.S. v. Missouri*, 535 F.3d 844, 850 (8th Cir. 2008) (noting that a State or chief election official "may not delegate the responsibility to conduct a general program to a local official and thereby avoid responsibility if such a program is not reasonably conducted"); *see also, e.g.*, Ariz. Rev. Stat. § 16-165 (setting forth requirements for the Secretary of State—in conjunction with county recorders—to conduct regular voting list maintenance activities).

II. **Four Arizona Counties Have More Registered Voters Than Voting-Eligible Citizens, and Nine Others Have Suspiciously High Rates of Voter Registration.**

Based on data gathered from the U.S. Census Bureau's 2017-2021 American Community Survey and the most up-to-date count of registered voters available from the Arizona Secretary of State, Arizona is failing to meet its list maintenance obligations. Comparing the registered voter count to the 2017-2021 American Community Survey reveals that Apache (117.4%), La Paz (100.5%), Navajo (100.1%), and Santa Cruz (112.6%) Counties all have greater than 100% voter registration.

In other words, there are more registered voters than eligible voters. This plainly shows that voter registration records are not being maintained. Meanwhile, nine other counties across the State have more than 90% (in some cases, approaching 100%) of their citizen voting-age populations registered to vote: Cochise (93.4%), Coconino (93.6%), Gila (90.6%), Maricopa (97.8%), Mohave (95.2%), Pima (92.0%), Pinal (91.8%), Yavapai (99.0%), Yuma (94.3%). Graham County also has over 80% voter registration (81.1%) In total, that is fourteen out of fifteen counties with suspiciously high voter registration rates.

These voter registration rates are abnormally, or in the case of the four counties with greater than 100% registration, impossibly, high. This constitutes strong evidence that Arizona's voter rolls are not being properly maintained. According to the U.S. Census Bureau, only 72.7% of the citizen voting-age population was registered nationwide in the November 2020 election. *See* U.S. Census Bureau, *Voting and Registration in the Election of November 2020, Table 4a, Reported Voting and Registration, for States: November 2020*, https://perma.cc/7BUT-ZLDA. Similarly, only 66.9% of the citizen voting-age population was registered nationwide in the November 2018 election. *See* U.S. Census Bureau, *Voting and Registration in the Election of November 2018, Table 4a, Reported Voting and Registration, for States: November 2018*, https://perma.cc/5WKB-E83G; *see also* U.S. Census Bureau, *Historical Reported Voting Rates, Table A-3b, Reported Voting and Registration for Total and Citizen Voting-age Population by State: Congressional Elections 1974 to 2018*, https://perma.cc/92QM-77M6. The U.S. Census Bureau further reported that Arizona's statewide voter registration rates for the 2020 and 2018 elections were 76.4% and 68.6% of the citizen voting-age population, respectively. *Id.* Thus, these 14 counties are significant outliers, touting voter registration rates 8 to 50 percentage points higher than the national figures from 2020 and 2018, and 4 to 48 percentage points above the State figures for the same period. Discrepancies on this scale almost certainly cannot be attributed to above-average voter participation, but instead point to deficient list maintenance.

Arizona's failure to provide accurate voter rolls violates federal law, jeopardizes the integrity of the upcoming 2024 federal election, and signals to voters that elections in Arizona are not being properly safeguarded.

**III.    Avoiding Litigation**

The NVRA includes a private right of action, empowering any "person who is aggrieved by a violation" of the statute to bring a civil action in federal district court for declaratory or injunctive relief. 52 U.S.C. §20510(b)(1)-(2). If the violations we have identified are not corrected within 90 days of receipt of this letter, we will have no choice but to file a lawsuit. *See* 52 U.S.C. §20510(b)(2).

We hope to avoid litigation and would welcome immediate efforts by your office to bring Arizona into compliance with Section 8. We ask that you evaluate your current list maintenance procedures and protocols to identify the cause of the compliance failures discussed in this letter. We also ask that you modify your current list maintenance program to ensure that it is comprehensive, nondiscriminatory, and in compliance with federal law. Specifically, your list

**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK** PLLC

maintenance program must identify and remove the following categories of individuals from the official lists of eligible voters:

1. All persons who are ineligible to vote by reason of a change in residence;
2. Deceased individuals;
3. Persons who are presently incarcerated;
4. All other ineligible voters.

We also ask that you—and should they wish to respond separately, each named county—respond in writing within 45 days of the date of this letter. This response should fully describe the efforts, policies, and programs you are taking, or plan to undertake prior to the 2024 general election to bring Arizona into compliance with Section 8. This response should also note when you plan to begin and complete each specified measure and the results of any programs or activities you have already undertaken. We also ask you to advise us what policies are presently in place, or will be put in place, to ensure effective and routine coordination of list maintenance activities with the federal, State, and local entities outlined below. Finally, we seek a description of the specific steps you intend to take to ensure routine and effective list maintenance on a continuing basis beyond the 2024 election. In order to avoid litigation, we may seek certain reasonable assurances that you will affirmatively undertake these efforts, including the execution of a settlement agreement.

Should you refuse to comply with Section 8 and thus necessitate legal action, you should be aware that the NVRA authorizes courts to award "reasonable attorney fees, including litigation expenses, and costs" to the prevailing party. 52 U.S.C. §20510(c). Therefore, if litigation ensues, you risk bearing the financial burden of the full cost of the litigation.

### IV.   Preservation of Records

We further ask that you take steps to preserve certain records as required under the NVRA, should they be needed in the future or for possible litigation. 52 U.S.C. §20507(i). These documents and records include, but are not limited to:

1. A copy of the most recent voter registration database for the State of Arizona and for each named county, including pertinent information on each voter (name, date of birth, home address, voter activity, and active or inactive status);
2. Internal communications and emails of the Arizona Secretary of State's office, applicable county boards of elections, and any divisions, bureaus, offices, third party agents, and contractors relating to voter list maintenance;
3. All emails or other communications between the Arizona Secretary of State and county elections officials concerning their list maintenance activities, their duties to maintain accurate and current lists, and any consequences arising from a failure to do so;
4. All email or other communications between the Arizona Secretary of State and any State or federal offices and agencies, in which the Arizona Secretary of State seeks or obtains information about registered voters who have moved, been convicted and imprisoned, died, or are otherwise ineligible, for use in list maintenance activities; and

**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK** PLLC

5. All email or other communications between the Arizona Secretary of State and any other State, as well as email and communications with the Interstate Voter Registration Cross-Check Program, the Electronic Registration Information Center, the American Association of Motor Vehicle Authorities, and the National Association for Public Health Statistics and Information Systems, regarding obtaining information about voters who are deceased or who have moved for use in list maintenance activities.

We look forward to working with you in a productive fashion to ensure the accuracy and currency of Arizona's voter rolls and to protect the integrity of its voting process. While we hope to avoid litigation, if we do not receive the requested response, and if Arizona fails to take the necessary curative steps to resolve the issues identified in this letter, you will be subject to a lawsuit seeking declaratory and injunctive relief.

We look forward to your response.

Sincerely,

*/s/ Jason Torchinsky*
Jason B. Torchinsky
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
T: (540) 341-8808
jtorchinsky@holtzmanvogel.com

Dallin B. Holt
Brennan A.R. Bowen
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
Esplanade Tower IV
2575 East Camelback Rd
Suite 860
Phoenix, AZ 85016
T: (540) 341-8808
dholt@holtzmanvogel.com
bbowen@holtzmanvogel.com



August 15, 2023

*Via Email*

Jason Torchinsky
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
jtorchinsky@hotzmanvogel.com

   RE:  *NVRA Letter Received by AZSOS on August 10, 2023*

Dear Mr. Torchinsky:

Thank you for your concern regarding Arizona's voter rolls, which you will be relieved to know are properly maintained pursuant to applicable state and federal law. Indeed, in explaining the requirements of the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"), your letter included many of the processes our professional election officials carry out every day to maintain the integrity our voter rolls.

The letter was, however, short on data and citations to support your allegation that Arizona does not currently comply with all applicable laws regarding voter roll maintenance based on statistical inference. Nevertheless, we undertook a preliminary review of the data upon which you claim to rely, but we found it does not support for your claims. It is therefore impossible to describe "efforts, policies, and programs you are taking, or plan to undertake . . . to bring Arizona into compliance with Section 8," (NVRA Demand at 4), because based on our policies and procedures, as well as a review of the data, Arizona already maintains its voters rolls in compliance with NVRA.

Arizona has a rigorous program to maintain accurate voter registration rolls, while complying with all legally proscribed safeguards to avoid disenfranchising voters. These procedures include utilizing information from state and federal databases to remove voters who are deceased, convicted and ineligibile felons, and people adjudicated incapacitated by a court. A.R.S. § 16-165; 52 U.S.C. §§ 20507, 21083. You can review a more thorough description of these policies

in Chapter 1 of the Arizona Elections Procedure Manual ("EPM"),[1] which has the force of law. A.R.S. § 16-452. This includes an entire sub-section on canceling voter registration in compliance with NVRA. EPM at 37-40.

In an additional act of due diligence, we pulled some data to determine whether your claims that four Arizona counties had "more registered voters than eligible voters" and that ten Arizona counties had "suspiciously high voter registration rates," (NVRA Demand at 3), were factually accurate.

First, it is notable that the tables that you use for comparison of total registered voters and the citizen voting age population ("CVAP") in prior years include specific cites and links to those tables. These tables, from 2020 and 2018, show that Arizona was, only a few years ago, well within the national norm for voter registration as a percentage of CVAP. However, whatever data which allegedly undergirds your claim that a problem developed since 2020, is notably absent from your otherwise well-sourced letter.

Second, comparing the data that is appropriately sourced with more recent data show that, at least on a statewide basis, your claims of "suspiciously high" voter registration rates in Arizona are unsubstantiated. (See Exhibit A, comparing excerpts of U,S. Census Table 4a from 2018, 2020, and 2022). As of 2022, there were more than 5 million total citizens of voting age in Arizona, only 3.5 million of which, or 62.1%, were registered to vote according to U.S. Census estimates. This is slightly below the national average of 63.2%, but well within the margin of error.

Finally, the number of registered voters reported by the U.S. Census were signifcantly lower than the voter registration numbers tracked by the Arizona Secretary of State.[2] For example, in 2020, Arizona Secretary of State records indicate a total of 4,143,929 active registered voters, while the U.S. Census data indicates only estimated 3,878,000 registered voters. In other words, not only does the available data on its face not support your claims, but the comparators used are estimates that undercount the number of actual registered voters in the state. However, even using comparators that skew the data in favor of your allegations, and utilizing an older (and thus, lower) reported CVAP, the data does not support your allegation that Arizona has "suspiciously" or "impossibly" high voter registration rates.

---

[1] Arizona Secretary of State Election Procedures Manual (2019), *available at* https://azsos.gov/sites/default/files/2019_ELECTIONS_PROCEDURES_MANUAL_APPROVED.pdf.

[2] The observed discrepancy between actual registered voters in a jurisdiction and the U.S. Census estimates of registered voters is not limited to Arizona. For example, the Alabama Secretary of State indicates that there were 3,311,739 active registered voters in 2022, compared to the U.S. Census estimate of 2,499,000 registered voters. It is the same for Alabama (1.76M versus 1.36M), California (21.94M versus 17M), and Colorado (4.27M versus 3.16M). In other words the U.S. Census estimates of registered voters are consistently less than the actual number of voters registered in a state.

NVRA and HAVA are laws which protect the integrity of the election system *and* the right of the people to vote. The ninety-day opportunity to cure period, and the section authorizing attorney's fees for a prevailing plaintiff, ensure that the provisions of NVRA are adhered to. But they were never intended to act as a cudgel to purge validly-registered Americans from the voter rolls, nor to require election officials to provide solutions to problems that, based on the allegations provided, do not exist.

Thank you for your correspondence. As we have explained, Arizona voter registration processes comply with the requirements of NVRA and HAVA, including the provisions regarding retention of records. Of course, if you have additional concerns and substantiated facts to support them, we would be happy to review it and respond in accordance with applicable law.

Sincerely,

*Amy B. Chan*

Amy B. Chan
General Counsel

3

# EXHIBIT A

**Table 4a. Reported Voting and Registration of the Total Voting-Age Population, for States: November 2022**
(Numbers in thousands)

| Characteristic | Total population | Total citizen population | Registered | | | | Voted | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Total registered | Percent registered (Total) | Margin of error [1] | Percent registered (Citizen) | Margin of error [1] | Total voted | Percent voted (Total) | Margin of error [1] | Percent voted (Citizen) | Margin of error [1] |
| UNITED STATES | 255,457 | 233,546 | 161,422 | 63.2 | 0.5 | 69.1 | 0.5 | 121,916 | 47.7 | 0.5 | 52.2 | 0.5 |
| ALABAMA | 3,857 | 3,716 | 2,499 | 64.8 | 3.0 | 67.3 | 2.7 | 1,688 | 43.8 | 3.3 | 45.4 | 3.0 |
| ALASKA | 531 | 516 | 373 | 70.2 | 2.9 | 72.2 | 2.9 | 282 | 53.1 | 2.8 | 54.6 | 2.7 |
| ARIZONA | 5,731 | 5,093 | 3,560 | 62.1 | 3.2 | 69.9 | 3.3 | 2,844 | 49.6 | 3.1 | 55.8 | 3.3 |
| ARKANSAS | 2,277 | 2,188 | 1,360 | 59.8 | 3.0 | 62.2 | 2.8 | 961 | 42.2 | 3.0 | 43.9 | 2.8 |
| CALIFORNIA | 29,870 | 25,315 | 17,032 | 57.0 | 1.7 | 67.3 | 1.6 | 13,044 | 43.7 | 1.6 | 51.5 | 1.6 |
| COLORADO | 4,571 | 4,384 | 3,162 | 69.2 | 3.7 | 72.1 | 3.5 | 2,687 | 58.8 | 4.4 | 61.3 | 4.1 |

Source: U.S. Census Bureau, Current Population Survey, November 2022
available at https://www.census.gov/data/tables/time-series/demo/voting-and-registration/p20-586.html

**Table 4a. Reported Voting and Registration for States: November 2020**
(In thousands)

| STATE | Total population | Total citizen population | Registered | | | | Voted | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Total registered | Percent registered (Total) | Margin of error [1] | Percent registered (Citizen) | Margin of error [1] | Total voted | Percent voted (Total) | Margin of error [1] | Percent voted (Citizen) | Margin of error [1] |
| UNITED STATES | 252,274 | 231,593 | 168,308 | 66.7 | 0.4 | 72.7 | 0.4 | 154,628 | 61.3 | 0.4 | 66.8 | 0.4 |
| ALABAMA | 3,769 | 3,716 | 2,527 | 67.0 | 3.1 | 68.0 | 3.1 | 2,247 | 59.6 | 3.3 | 60.5 | 3.3 |
| ALASKA | 528 | 516 | 383 | 72.6 | 3.2 | 74.2 | 3.1 | 330 | 62.4 | 3.4 | 63.8 | 3.4 |
| ARIZONA | 5,638 | 5,075 | 3,878 | 68.8 | 2.5 | 76.4 | 2.5 | 3,649 | 64.7 | 2.6 | 71.9 | 2.6 |
| ARKANSAS | 2,283 | 2,195 | 1,361 | 59.6 | 3.4 | 62.0 | 3.4 | 1,186 | 51.9 | 3.4 | 54.0 | 3.5 |
| CALIFORNIA | 30,342 | 25,946 | 18,001 | 59.3 | 1.2 | 69.4 | 1.2 | 16,893 | 55.7 | 1.2 | 65.1 | 1.2 |
| COLORADO | 4,525 | 4,200 | 2,993 | 66.2 | 2.9 | 71.3 | 2.9 | 2,837 | 62.7 | 3.0 | 67.6 | 3.0 |

Source: U.S. Census Bureau, Current Population Survey, November 2020
available at https://perma.cc/7BUT-ZLDA

**Table 4a. Reported Voting and Registration, for States: November 2018**
(In thousands)

| STATE | Total population | Total citizen population | Registered | | | | Voted | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Total registered | Percent registered (Total) | Margin of error [1] | Percent registered (Citizen) | Margin of error [1] | Total voted | Percent voted (Total) | Margin of error [1] | Percent voted (Citizen) | Margin of error [1] |
| UNITED STATES | 249,748 | 228,832 | 153,066 | 61.3 | 0.3 | 66.9 | 0.3 | 122,281 | 49.0 | 0.3 | 53.4 | 0.3 |
| ALABAMA | 3,753 | 3,609 | 2,490 | 66.4 | 2.5 | 69.0 | 2.5 | 1,830 | 48.8 | 2.7 | 50.7 | 2.7 |
| ALASKA | 523 | 497 | 337 | 64.4 | 2.7 | 67.7 | 2.7 | 263 | 50.2 | 2.9 | 52.8 | 2.9 |
| ARIZONA | 5,361 | 4,757 | 3,262 | 60.8 | 2.2 | 68.6 | 2.2 | 2,800 | 52.2 | 2.3 | 58.9 | 2.4 |
| ARKANSAS | 2,261 | 2,158 | 1,262 | 55.8 | 2.7 | 58.5 | 2.8 | 919 | 40.6 | 2.7 | 42.6 | 2.8 |
| CALIFORNIA | 30,243 | 25,525 | 15,690 | 51.9 | 1.0 | 61.5 | 1.0 | 13,240 | 43.8 | 0.9 | 51.9 | 1.0 |
| COLORADO | 4,353 | 4,029 | 2,645 | 60.8 | 2.5 | 65.6 | 2.5 | 2,342 | 53.8 | 2.5 | 58.1 | 2.6 |

Source: U.S. Census Bureau, Current Population Survey, November 2018
available at https://perma.cc/5WKB-E83G



September 12, 2023

Adrian Fontes
Office of the Secretary of State
1700 W Washington St Fl 7
Phoenix AZ 85007-2808

      RE:    NVRA RESPONSE LETTER DATED AUGUST 15, 2023

Dear Secretary Fontes:

      Thank you for your prompt response to our client's August 8, 2023, letter regarding Arizona's compliance—or lack thereof—with the National Voter Registration Act ("NVRA") and Help America Vote Act ("HAVA"). Unfortunately, the letter leaves our client's concerns largely unaddressed and muddies the waters instead of clarifying them. Indeed, the letter is, at times, flatly contradictory. *See, e.g.*, (AZSOS NRVA Response at 1–2) (alleging on one page that our initial letter was "short on data and citations" and on that next page that it was a "well-sourced letter").

      The letter additionally attempts a statistical slight-of-hand, which does not assuage our client's concerns surrounding Arizona's voter rolls. Specifically, in generating estimates of the percentage of citizens of voting age population ("CVAP") that are registered in Arizona, the letter relies on U.S. Census *estimates* of Arizona's registered voters for 2022 (roughly 3.5 million) instead of the Secretary's statistics on *actual* registered voters—concluding that 62.1% of Arizona citizens are registered to vote. (*Id.* at 2). This is misleading in at least two ways.

      First, the U.S. Census *estimates* voter registration data, but the Secretary's staff is responsible for accurately *tracking the actual number* of registered voters in your state. *See* 52 U.S.C. §21083(a)(2)(A). Indeed, you even acknowledge that "the number of registered voters reported by the U.S. Census were signifcantly [sic] lower than the voter registration numbers tracked by the Arizona Secretary of State." (AZSOS NRVA Response at 2). Thus, the more accurate statistical analysis would be to take the Census' estimates for CVAP and compare it against Arizona's actual registered voters. The percentage of registered CVAP under this more accurate formula is closer to 82%[1], not the 62% the Response suggests. Put differently, the letter cites statistics—that the letter acknowledges as an undercount—to get a lower percentage of registered CVAP.[2]

---

[1] Even this percentage may be an undercount as your Response provides total number of active registered voters from 2020, and not 2022. (AZSOS NRVA Response at 2).

[2] This is a fact you tacitly acknowledge when you write that U.S. Census "estimates [are an] undercount [of] the number of actual registered voters in the state." (*Id.*)

15405 John Marshall Highway | Haymarket, VA 20169 | 540.341.8808 | holtzmanvogel.com

**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK** PLLC

Second, the only data you provide on register voters—the 2020 registration number of roughly 4.14 million—is based only on *active* and not *total* registered voters (*i.e.*, does not include *active* and *inactive* registered voters together). Thus, unless Arizona has zero inactive registered voters, your 4.14 million number is an undercount of the total number of registered voters. This would likewise drive the 82% of registered CVAP number higher.

Put simply, the letter's misapplication of (or intentionally misleading on) statistical analysis results in CVAP registration percentages that are drastically lower than reality. As the Supreme Court reasoned in *Brnovich v. Democratic Nat'l Comm.*, this is the "sort of statistical manipulation" that can be "highly misleading" and serve to "mask" the issue, rather than illuminate it. *See* 141 S. Ct. 2321, 2345 (2021).

What's more, the Response does not directly address our client's county-level claims. Instead, the letter responds to our client's county-level data with state-level data. This apples-to-oranges comparison is thoroughly unhelpful in resolving our client's claims.

Finally, the letter's insistence that "Arizona has a rigorous program to maintain accurate voter registration rolls, while complying with all legally proscribed safeguards to avoid disenfranchising voters" rings hollow when the State is not forthcoming with accurate statistical information. While we appreciate citations to the Arizona laws intended to foster compliance with the NVRA, (AZSOS NRVA Response at 1–2), the existence of these law does not ensure that the State is properly following them or that voter rolls are being properly maintained in compliance with the NVRA.

As we previously explained, although our client hopes to avoid litigation, if Arizona fails to take the necessary curative steps to resolve the issues identified in this letter, our client is prepared to file a lawsuit seeking declaratory and injunctive relief. The 90-day window to resolve these issues began on August 10, 2023, *see* 52 U.S.C. §20510(b)(2), which is the date that your office acknowledged it received our Notice Letter. (AZSOS NRVA Response at 1). Consequently, you have until November 8, 2023, to rectify the issues identified in our original Notice Letter and reiterated here. *See id.* The Response's insistence that there is no issue, without producing enough data to verify such a contention, will not be deemed as a resolution of this matter, and our client will be forced to file suit.

**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK** PLLC

Like you, our client sincerely believes that federal and state laws are designed to protect the integrity of the election system and the right to vote. However, if these laws are not enforced, their protections are nothing more than empty promises.

We look forward to your response.

Sincerely,

 */s/ Jason Torchinsky*
Jason B. Torchinsky
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
T: (540) 341-8808
jtorchinsky@holtzmanvogel.com

Dallin B. Holt
Brennan A.R. Bowen
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
Esplanade Tower IV
2575 East Camelback Rd
Suite 860
Phoenix, AZ 85016
T: (540) 341-8808
dholt@holtzmanvogel.com
bbowen@holtzmanvogel.com