1   **WO**

2

3

4

5

6           **IN THE UNITED STATES DISTRICT COURT**

7           **FOR THE DISTRICT OF ARIZONA**

8

9   Scot Mussi, et al.,                    No. CV-24-01310-PHX-DWL

10                  Plaintiffs,            **ORDER**

11  v.

12  Adrian Fontes,

13                  Defendant.

14

15          In this action, Plaintiffs allege that Arizona has failed to comply with a provision of

16  the National Voter Registration Act ("NVRA") that requires states to make a "reasonable

17  effort" to maintain accurate and updated voter registration records.  (Doc. 1.)[1]  The sole

18  defendant is Arizona Secretary of State Adrian Fontes ("Secretary Fontes"), who is sued

19  in his official capacity.  (*Id.* ¶ 34.)  Secretary Fontes recently filed a motion to dismiss the

20  complaint.  (Doc. 20.)  That motion is not yet fully briefed.

21          This order addresses a motion to intervene filed by the Arizona Alliance for Retired

22  Americans and Voto Latino (together, "Proposed Intervenors") shortly after this action was

23  initiated.  (Doc. 15.)  The motion to intervene, which is opposed by Plaintiffs (but not

24  Secretary Fontes), is now fully briefed.  (Docs. 18, 22.)  For the reasons that follow, the

25  motion to intervene is denied.[2]

26  ────────────
    [1]      Plaintiffs are (1) Scot Mussi, the president of the Arizona Free Enterprise Club;
27  (2) Gina Swoboda, chair of the Republican Party of Arizona; and (3) Steven Gaynor, a
    registered Arizona voter.  (Doc. 1 ¶¶ 21, 23, 27.)
28  [2]      Proposed Intervenors' request for oral argument is denied because the issues are
    fully briefed and argument would not aid the decisional process.  *See* LRCiv 7.2(f).

**ANALYSIS**

Proposed Intervenors seek to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure and, alternatively, seek permissive intervention under Rule 24(b).

I.     Intervention As Of Right

Intervention as of right is available to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Courts in the Ninth Circuit employ a four-part test when analyzing intervention as of right:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)).

"In evaluating whether these requirements are met, courts are guided primarily by practical and equitable considerations.  Courts construe Rule 24(a) broadly in favor of proposed intervenors." *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022) (cleaned up).  Nevertheless, "[f]ailure to satisfy any one of the requirements is fatal to the application." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).   As explained below, even assuming that Proposed Intervenors can satisfy the first three elements of the test for intervention as of right, they cannot satisfy the fourth. *Cf. Callahan*, 42 F.4th at 1020 ("We assume without deciding that Neverson's motion to intervene was timely, and that Neverson has an interest in recovering penalties pursuant to PAGA that is sufficient to satisfy prongs two and three of the test articulated above.  Even with these assumptions, Neverson's motion for intervention as a matter of right fails at the fourth and final prong of the *Wilderness Society* test.").

A.     **Proposed Intervenors Have Not Made A "Very Compelling Showing" That Their Interest Will Be Inadequately Represented By The Existing Governmental Litigant**

As an initial matter, the Ninth Circuit has held that "[t]here is . . . an assumption of adequacy when the government is acting on behalf of a constituency that it represents.  In the absence of a very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003)  (cleaned up). *See also Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) (applying an assumption of adequate representation based on *Arakaki* "because . . . a governmental entity (Oakland) was already acting on behalf of [the proposed intervenors'] interests in this action"); *Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006) ("[D]efendant is the Oregon government, and intervenor-defendants (the Oregon AFL–CIO and its president) share the same interest with defendant, *i.e.*, defending Measure 26.  Therefore, it is assumed that defendant is adequately representing intervenor-defendants' interests.") (citing *Arakaki*, 324 F.3d at 1086); 7C Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1909 (3d ed. Supp. 2022) (noting that one of the "situations [where] representation will be presumed adequate unless special circumstances are shown" is "when a governmental body or officer is the named party").[3]  Although Proposed Intervenors seem to suggest (Doc. 15 at 14 n.6; Doc. 22 at 8) that *Arakaki*'s holding on this point is no longer good law in light of *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022), the Court disagrees—*Berger* pointedly declined to overrule the lower-court decisions holding that "a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government" and instead held "only . . . that a presumption of adequate

---

[3]      In their motion, Proposed Intervenors cite various appellate decisions from outside the Ninth Circuit in support of the proposition that "[c]ourts have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." (Doc. 15 at 14, cleaned up.)  But this Court must, of course, follow Ninth Circuit law.

representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Id.* at 197. It is unclear why this narrow holding should be viewed as assisting Proposed Intervenors here, as neither is a "duly authorized state agent."

The Court acknowledges that, in *Callahan*, the Ninth Circuit suggested that *Berger* may "call[] into question" *Arakaki*'s holding that "[w]hen an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Callahan*, 42 F.4th at 1021 n.5 (cleaned up). But *Arakaki*'s now-questionable holding on that point, which addressed the presumptions that arise when *any* existing litigant shares the same ultimate objective as a proposed intervenor, appeared to be distinct from its separate holding concerning the assumptions that arise when a particular type of existing litigant—a government entity—is involved. *Arakaki*, 324 F.3d at 1086 ("When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. . . . *There is also* an assumption of adequacy when the government is acting on behalf of a constituency that it represents.") (emphasis added). *See also Prete*, 438 F.3d at 957 (addressing these presumptions separately, albeit while noting that "it is unclear whether [the governmental-litigant] 'assumption' rises to the level of a second presumption] or rather is a circumstance that strengthens the first presumption").

The bottom line is that although *Berger* and *Callahan* may have nibbled around the edges of *Arakaki*'s holding that an assumption of adequate representation arises in a case involving a governmental litigant who shares the same interest as a would-be intervenor, they declined to overrule it[4] and their reasoning was not clearly irreconcilable with it. As a result, it remains binding Ninth Circuit law that this Court is duty-bound to follow. *Miller*

---

[4]     *Berger*, 597 U.S. at 196-97 ("[S]ome lower courts have suggested that a presumption of adequate representation remains appropriate in certain classes of cases. . . . For example, the Fourth Circuit has endorsed a presumption of adequate representation where a member of the public seeks to intervene to defend a law alongside the government. . . . In the end, to resolve this case we need not decide whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government . . . ."); *Callahan*, 42 F.4th at 1021 n.5 ("Because we do not apply [*Arakaki*'s] 'same ultimate objective' rule here, we offer no opinion as to whether it remains good law in light of *Berger*.").

*v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc) (addressing "when, if ever, a district court . . . is free to reexamine the holding of a prior panel in light of an inconsistent decision by a court of last resort" and concluding that such reexamination is permissible only when "the relevant court of last resort [has] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable").

Applying *Arakaki*, the Court has little trouble concluding that Proposed Intervenors and Secretary Fontes share the same interest in this lawsuit—both seek to defend the adequacy of Arizona's efforts to comply with the NVRA and to reject Plaintiffs' request for declaratory and injunctive relief concerning such compliance. *See also Prete*, 438 F.3d at 957 (because "defendant is the Oregon government, and intervenor-defendants (the Oregon AFL–CIO and its president) share the same interest with defendant, *i.e.*, defending Measure 26 . . . it is assumed that defendant is adequately representing intervenor-defendants' interests"). Thus, under *Arakaki*, Proposed Intervenors must make a "very compelling showing" that Secretary Fontes will not adequately represent their interests. 324 F.3d at 1086. Proposed Intervenors have not satisfied that exacting standard. Indeed, Secretary Fontes has already filed a motion to dismiss that not only challenges Plaintiffs' standing but also argues that dismissal is warranted under Rule 12(b)(6) because "Arizona objectively exceeds NVRA's standards." (Doc. 20 at 12.) These are the same arguments that Proposed Intervenors hope to raise. (Doc. 19 at 1-2 [motion to dismiss filed by Proposed Intervenors, arguing that "[t]o start, each Plaintiff lacks standing" and that "[o]n the merits, Plaintiffs fare no better" because "Plaintiffs offer no clear allegation as to how Defendant's list-maintenance efforts fall short of the NVRA's 'reasonable efforts' requirement"].) The Ninth Circuit has rejected intervention requests in cases involving governmental litigants under analogous circumstances. *See, e.g., Arakaki*, 324 F.3d at 1086-87 (concluding that "the State defendants will adequately represent Hoohuli's interest at trial" in part because "based on the record before this Court, present parties have demonstrated they are capable and willing to make all of Hoohuli's arguments"); *Prete*,

438 F.3d at 958-59 (rejecting contention that governmental litigant would be unable to adequately represent the interests of proposed intervenors in an election-related challenge in part because "defendant, as Oregon's Secretary of State, is undoubtedly familiar with the initiative process and the requisite signature-gathering; indeed, defendant is the government party responsible for counting the signatures . . . [and] also administers Oregon's election processes and promulgates regulations to give effect to the state's election statutes").

Notwithstanding this, Proposed Intervenors argue that Secretary Fontes does not share and/or is unable to adequately represent their interests because he may hold a different perspective than they do on how the NVRA should, in general, be effectuated. (Doc. 15 at 15, cleaned up ["The Secretary is expressly charged with pursing the NVRA's twin objectives—easing barriers to registration and voting, while at the same time protecting electoral integrity and the maintenance of accurate voter rolls.  These competing goals naturally create some tension.  In contrast, . . . groups like Proposed Intervenors have the mission and interest explicitly to pursue the second of the expressly recognized interests that motivated Congress to enact the NVRA—*i.e.*, eliminating barriers to registration and voting.  As a result, it is entirely possible that the Secretary may take positions contrary to Proposed Intervenors' interests."].  But in *Oakland Bulk & Oversized Terminal*, the Ninth Circuit rejected a nearly identical argument by a proposed intervenor who was attempting to establish the inadequacy of a governmental litigant's representation.  There, the City of Oakland was sued after it barred one of its contractual partners from transporting coal through a commercial terminal.  960 F.3d at 607-08.  A pair of environmental organizations attempted to intervene as of right in the lawsuit against Oakland, arguing that even though they shared the same objective as Oakland in the lawsuit (*i.e.*, "upholding the Ordinance and Resolution" banning the transportation of coal), their "narrower interest" in upholding the ban, which consisted of "a focus on health, safety and environmental protections, as opposed to Oakland's broader concerns that include such matters as the City's finances and its contractual relationship with [the plaintiff]," demonstrated the inadequacy of Oakland's

representation. *Id.* at 620. The Ninth Circuit disagreed, explaining that the mere existence of such different perspectives was "alone . . . insufficient" to establish inadequacy. *Id.* In a related vein, the court explained that the proposed intervenors "failed to offer persuasive evidence, at the time of their motion to intervene, that Oakland's broader interests would lead it to stake out an undesirable legal position." *Id.*

So, too, here. Even assuming that Proposed Intervenors have identified some philosophical difference between their view of the NVRA and that of Secretary Fontes, there is no reason to believe this difference will cause Secretary Fontes to stake out a legal position in this case that is undesirable from their perspective. As noted, Secretary Fontes has now moved to dismiss the complaint on the very same grounds that Proposed Intervenors believe it should be dismissed. Under *Oakland Bulk & Oversized Terminal*, this is another reason to conclude that Proposed Intervenors' claims of inadequate representation are unavailing. *Id.* ("Intervenors argue that Oakland was neither positioned nor willing to make all of Intervenors' arguments. . . . They point initially to the fact that Intervenors moved to dismiss OBOT's Commerce Clause claim, while Oakland did not. But Oakland later incorporated Intervenors' Commerce Clause arguments at the summary judgment stage, conclusively establishing its willingness and ability to take that position.").

This case is also distinguishable from *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011), which Proposed Intervenors cite repeatedly in their motion papers. There, three conservation groups sought to intervene in a lawsuit that challenged the validity of an interim order issued by the United States Forest Service. *Id.* at 895. Because the proposed intervenors sought to intervene on the same side as a governmental litigant (the Forest Service), the Ninth Circuit noted that, under *Arakaki*, there was "an assumption of adequacy . . . which must be rebutted with a compelling showing." *Id.* at 898 (citation omitted). Nevertheless, the court concluded that this assumption had been rebutted due to the unusual posture of the case, where (1) the Forest Service had only issued the interim order "under compulsion of a district court decision gained by [the proposed intervenors'] previous litigation" *against* the Forest Service, and

(2) the Forest Service was "simultaneously appealing the decision that led [it] to adopt the now-challenged Interim Order." *Id.* at 899.  Given those unusual details, the court agreed with the conservation groups that the Forest Service would not adequately represent their interests in the new lawsuit, as it would "defend the Interim Order" only on the ground that it was "required by the outcome of the prior litigation and not by the [statutory] mandate that the Forest Service 'maintain' the Study Area's wilderness character." *Id.* at 898-99.  The court continued: "This represents more than a mere difference in litigation strategy, which might not normally justify intervention, but rather demonstrates the fundamentally differing points of view between Applicants and the Forest Service on the litigation as a whole." *Id.* at 899.  This case is not remotely similar—Secretary Fontes was not forced to adopt his current NVRA-compliance practices based on prior litigation in which he was adverse to Proposed Intervenors and Secretary Fontes has not suggested that he is only following those practices due to a court order he is simultaneously challenging.  To the contrary, Secretary Fontes's position is that "[w]hatever 'reasonable efforts' NVRA requires for list maintenance, Arizona objectively exceeds NVRA's standards. . . . Indeed, Arizona has a well-established, rigorous list maintenance program, as established by data stretching back multiple election cycles."  (Doc. 20 at 12-15.)  This is essentially identical to Proposed Intervenors' position.  (Doc. 19 at 12 ["Plaintiffs' meager attempt to cast doubt on the state's reasonable efforts to remove ineligible voters relies on misleading and faulty data and ignores Arizona's robust list maintenance procedures.  In short, nothing in the complaint creates a plausible inference that Arizona has failed to make 'reasonable efforts' to maintain its voter rolls in violation of the NVRA."].)

Nor are Proposed Intervenors aided by their citation to a handful of lower-court decisions from within the Ninth Circuit, which they characterize as providing support for their claim that "[t]he potential for these kinds of conflicts among litigation objectives suffices to show that the Secretary will not adequately represent Proposed Intervenors' distinct interests."  (Doc. 15 at 15-16.)  For example, in *Arizona Alliance for Retired Americans v. Hobbs*, 2022 WL 4448320 (D. Ariz. 2022), the district court *denied* a request

1  for intervention as of right by the Yuma County Republican Committee ("YCRC") in an

2  election-related challenge.  *Id.* at *2.  Although YCRC argued that the existing

3  governmental litigants would be unable to adequately represent its interests because it held

4  "a unique perspective" concerning the matters at issue, the district court held that this

5  difference in perspective failed to establish inadequacy for Rule 24(a)(2) purposes because

6  "YCRC does not have a different objective or interest than the existing Defendants in the

7  case . . . [as] both support SB 1260 and share the same objective of seeing that it is

8  enforced," because "the Attorney General has said that he will . . . adopt[] [the position] of

9  YCRC," and because "YCRC has not demonstrated what elements it would bring to the

10  case that the current Defendants would neglect.  To the contrary, the existing parties may

11  have more institutional and background knowledge about the underlying procedures that

12  the statutes seek to implement."  *Id.*[5]

13  Proposed Intervenors also cite *Donald J. Trump for President, Inc. v. Cegavske*,

14  2020 WL 5229116 (D. Nev. 2020), but the district court in that case summarily granted the

15  intervention request "[w]ithout opining on the merits" due to the existing litigants' non-

16  opposition.  *Id.* at *1.  As for *Center for Biological Diversity v. U.S. Bureau of Land*

17  *Management*, 266 F.R.D. 369 (D. Ariz. 2010), the National Rifle Association ("NRA")

18  was allowed to intervene in part because the governmental litigant had already made an

19  admission in its answer regarding an issue ("the prevalence of lead-related condor

20  mortalities") that the NRA intended to dispute.  *Id.* at 374.  Here, in contrast, Proposed

21  Intervenors do not express disagreement with any of the litigation positions that Secretary

22  Fontes has taken to date (which, indeed, seem to mirror Proposed Intervenors' position).

23  Instead, they simply raise the theoretical possibility of a future conflict.  (Doc. 15 at 15

24  ["[I]t is entirely possible that the Secretary may take positions contrary to Proposed

25  Intervenors' interests."].)  Finally, in *Paher v. Cegavske*, 2020 WL 2042365 (D. Nev.

26  2020), the proposed intervenors were allowed to intervene because they sought to challenge

27

28  [5]  Although *Arizona Alliance for Retired Americans* went on to authorize permissive intervention, 2022 WL 4448320 at *2-3, Proposed Intervenors puzzlingly cite it in support of their claim for intervention as of right.  (Doc. 15 at 15-16.)

1 certain aspects of the all-mail voting plan that the Nevada Secretary of State was seeking
2 to uphold against a different challenge. *Id.* at \*3 ("Proposed Intervenors do not agree that
3 the Plan goes far enough to protect the franchise."). Here, in contrast, Proposed Intervenors
4 intend to laud "the state's reasonable efforts to remove ineligible voters" and "Arizona's
5 robust list maintenance procedures." (Doc. 19 at 12 [Proposed Intervenors' motion to
6 dismiss].)

7        B.    **Proposed Intervenors' Showing Of Inadequacy Fails Even Under A**
8              **Lesser Burden**

9        Alternatively, even if Secretary Fontes's status as a governmental litigant did not
10 trigger an assumption of adequate representation under *Arakaki*, the Court would still
11 conclude that Proposed Intervenors failed to make the required showing of inadequacy. As
12 the Ninth Circuit recently explained in *Callahan* (which did not involve a governmental
13 litigant), courts "consider three factors in deciding whether a present party adequately
14 represents the interests of a prospective intervenor: (1) whether the interest of a present
15 party is such that it will undoubtedly make all of a proposed intervenor's arguments;
16 (2) whether the present party is capable and willing to make such arguments; and
17 (3) whether a proposed intervenor would offer any necessary elements to the proceeding
18 that other parties would neglect." 42 F.4th at 1020 (citation omitted). "Although the
19 burden of establishing inadequacy of representation may be minimal, the requirement is
20 not without teeth." *Prete*, 438 F.3d at 956.

21       Beginning with the first factor, Secretary Fontes's interest in this action—which, as
22 he has demonstrated in his motion to dismiss, is to defend the adequacy of Arizona's efforts
23 to comply with the NVRA and to reject Plaintiffs' request for declaratory and injunctive
24 relief concerning such compliance—leaves no doubt that he will make all of Proposed
25 Intervenors' arguments. At most, Proposed Intervenors have identified a theoretical
26 possibility that Secretary Fontes may, in the course of defending Arizona's compliance
27 with the NVRA during future stages of this case, advance a different perspective
28 concerning the purposes of the NVRA than they would have advanced. *Compare Hoopa*

*Valley Tribe v. U.S. Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1204 (E.D. Cal. 2022) ("Westlands' interests generally 'diverge from existing Federal Defendants, who, as operators of the entire CVP, have responsibilities to protect multiple interests.' This finding is reinforced by the FAC itself, which alleges that the Federal Defendants have unique trust obligations to Plaintiff that arguably require Federal Defendants to manage the CVP in certain ways to benefit Plaintiff, possibly at the expense of other water contractors, including Westlands.") (citation omitted). But "[w]hen a proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has rested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status." *Callahan*, 42 F.4th at 1021 (citation and internal quotation marks omitted). *See also Perry*, 587 F.3d at 949 ("The reality is that the [proposed intervenor] and [the existing defendant] have identical interests—that is, to uphold Prop. 8. Any differences are rooted in style and degree, not the ultimate bottom line. Divergence of tactics and litigation strategy is not tantamount to divergence over the ultimate objective of the suit. Because the existing parties will adequately represent the [proposed intervenor's] interests, we affirm the district court's denial of intervention as of right."); *Oakland Bulk & Oversized Terminal*, 960 F.3d at 620 (stating that an intervenor's "narrower interest" in the underlying subject matter "alone is insufficient" to demonstrate inadequacy and that the intervenor must offer "persuasive evidence" that the existing litigant's "broader interests *would* lead it to stake out an undesirable legal position") (emphasis added).

As for the second factor, Secretary Fontes is capable and willing to make all of Proposed Intervenors' arguments, as evidenced by the fact that he has now filed a motion to dismiss that raises the same dismissal arguments Proposed Intervenors hoped to raise in their motion to dismiss. *See, e.g., Oakland Bulk & Oversized Terminal*, 960 F.3d at 620 (rejecting proposed intervenors' contention "that Oakland was neither positioned nor willing to make all of [their] arguments" where Oakland's filing of a summary judgment motion raising the same argument that proposed intervenors hoped to raise "conclusively

establish[ed] its willingness and ability to take that position"); *Ariz. Alliance for Retired Americans*, 2022 WL 4448320 at *2 (second factor not satisfied because existing litigant already voiced intention to adopt proposed intervenor's interpretation of challenged statute).  *Cf. Prete*, 438 F.3d at 958 (rejecting proposed intervenor's contention that exiting defendant "may be inclined" to adopt "an unnecessarily narrow construction" of the challenged law where defendant did not, in fact, "argue[] for a narrowing construction").

As for the third factor, Proposed Intervenors have failed to identify any necessary elements to the proceeding that Secretary Fontes would neglect.  *See, e.g., Oakland Bulk & Oversized Terminal*, 960 F.3d at 620-21 (proposed intervenors' "expertise in environmental issues" and "narrower interest" in health, safety, and environmental issues were insufficient to support intervention); *Arakaki*, 324 F.3d at 1087 ("Hoohuli fails to demonstrate it would offer any necessary elements to the proceeding that other parties would neglect.  Hoohuli shares the same ultimate objective as the State and its agencies."); *Ariz. Alliance for Retired Americans*, 2022 WL 4448320 at *2 ("YCRC asserts that it offers a unique perspective to the case as a local political organization.  While its perspective may be different than the current Defendants, YCRC has not demonstrated what elements it would bring to the case that the current Defendants would neglect.  To the contrary, the existing parties may have more institutional and background knowledge about the underlying procedures that the statutes seek to implement.").

II.     Permissive Intervention

Proposed Intervenors also seek permissive intervention.  "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common."  *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted).  "The district court is given broad discretion to make this determination."  *Perry*

*v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).  As such, "[e]ven if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention."  *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).   When determining whether to grant permissive intervention, courts look to:

> [T]he nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case, . . . whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (footnotes omitted).

Having weighed these considerations, the Court declines in its discretion to grant permissive intervention.  As discussed in Part I above, Proposed Intervenors' interests and objectives align with those of Secretary Fontes and their participation will not significantly contribute to full development of the factual and legal issues in this action.  Permissive intervention is not required in these circumstances.  *Perry*, 587 F.3d at 955 ("The district court's denial of [permissive] intervention based on the identity of interests of the Campaign and the Proponents and the Proponents' ability to represent those interests adequately is supported by our case law on intervention in other contexts.").  *Cf. Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 269, 275-76 (D. Ariz. 2020) (denying request for permissive intervention by the Speaker of the Arizona House of Representatives and the Arizona Senate President because they failed to establish inadequate representation, as required for intervention as of right, and "the Court doesn't see how Proposed Intervenors can more adequately defend state laws than the State itself").  Additionally, allowing Proposed Intervenors to join this case as parties may prolong its resolution, which always serves as a discretionary reason to deny permissive intervention, *Perry*, 587 F.3d at 956, and is a particularly salient consideration here given that Plaintiffs seek "time-sensitive" relief "just weeks before the primary election and four months away from the general

election." (Doc. 18 at 12.)

Accordingly, **IT IS ORDERED** that:

1.     Proposed Intervenors' motion to intervene (Doc. 15) is **denied**.

2.     Proposed Intervenors' motion to dismiss (Doc. 19) is **struck**, as Proposed Intervenors are not parties to this action.

3.     Plaintiffs' motion to strike (Doc. 23) is **denied as moot**.

Dated this 12th day of July, 2024.

Dominic W. Lanza
United States District Judge